UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.  4:24 CR 295 JAR PLC ) |
| DYLAN FARMER, | ) ) |
| Defendant. | ) ) |

**MOTION FOR PRETRIAL DETENTION AND HEARING**

The United States of America, by and through its Attorneys, Sayler Fleming, United States Attorney for the Eastern District of Missouri, and Paul J. D'Agrosa, Assistant United States Attorney for the District, moves the Court to order Defendant detained pending trial and further requests that a detention hearing be held three days from the date of Defendant's initial appearance before the United States Magistrate pursuant to Title 18, United States Code, Section 3141, et seq.

As and for its grounds, the United States of America states as follows:

1. Defendant is currently charged with five counts of Assault on Federal Law Enforcement Officers, in violation of Title 18, United States Code, Section 111(a)(1), and five counts of Discharging a Firearm in Furtherance of Crime of Violence, in violation of Title 18, United States Code, Section 924(c).

2. Because Defendant has been charged with violations of Title 18, United States Code, Section 924(c), a rebuttable presumption arises pursuant to Title 18, United States Code, Section 3142(e)(3) that there are no conditions or combination of conditions which will reasonably assure the appearance of the defendant as required, and the safety of any other person and the community.

The Nature and Circumstances of the Offense

3. Pursuant to Title 18, United States Code, Section 3142(g)(1), the nature and

circumstances of the charged offenses warrant pre-trial detention. On February 13, 2024, federally deputized Task Force Officers, employed by the St. Louis County Police Department, and acting in their official capacity as part of both the Intelligence Unit and the Special Response Unit or SRU, tracked a vehicle to the 4500 block of Virginia Avenue, in the City of St. Louis. The vehicle's tags were connected to a suspect, wanted in connection with a double homicide investigation. As members of the SRU and Intelligence Unit surveilled the vehicle, the Defendant Farmer exited one of the residences on Virginia Avenue and approached the vehicle. Farmer was holding keys in his hand. He opened the target vehicle and as Farmer entered the driver's side of the vehicle, which was parked at the curb, Task Force Officers converged on his location. They were in unmarked vehicles but wearing "POLICE" insignia on the front and back of their ballistic vests. Derek Machens was operating an unmarked Dodge Charger and as he converged on Farmer, Machens flipped down his visor, which activated police emergency lights. The Dodge Charger was also equipped with additional emergency lights, which were also activated. Initially, Farmer's attention was drawn to the Dodge Charger.

4. Farmer then stood up and turned his attention to another unmarked police vehicle, a silver Ford Explorer, which was occupied by Task Force Officers Hooten, Fields and O'Brien. Farmer raised a pistol equipped with a 50-round drum magazine and began firing rounds at the Task Force Officers in the silver Explorer. At least one round struck the hood of the Explorer. The officers returned fire. Farmer then fled across the street and ran between buildings. TFO Fields was still on Virginia when he spotted Farmer through a breezeway of two residences. As Farmer reached an alley that ran parallel to Virginia, he stopped and fired at least one round at TFO Fields. Farmer then began to run up the alley, heading north.

5. Task Force Officer Hooten pursued Farmer into the alley. As Farmer ran up the alley, he stopped, turned towards Hooten and fired more rounds at TFO Hooten, who was wearing a vest which clearly identified him as a police officer. Farmer continued to flee and eventually ran

between houses at or near the 4400 block of Alaska. Farmer then hid on the front porch of a vacant residence at or about 4431 Alaska Avenue. In the meantime, Task Force Officers Battle and O'Fallon and police officer Huskey had driven from Virginia to Alaska, in pursuit of Farmer. As they drove down Alaska, they spotted Farmer hiding on the porch at 4431 Alaska. As soon as they spotted Farmer and as they attempted to exit their vehicle, Farmer opened fire on the Task Force Officers and officer Huskey. The Task Force Officers (some of the same officers who had been shot at on Virginia Avenue) returned fire and shouted loud commands for Farmer to drop his weapon and surrender. Farmer did not comply.

6. Sergeant Brian Flanagan, who was further down Alaska, heard the shots fired, stopped his vehicle and got out. As Sgt. Flanagan attempted to flank Farmer, Farmer turned his attention to Flanagan, who was also wearing a vest which clearly identified him as a police officer. Farmer then fired more rounds at Sgt. Flanagan, who returned fired. Farmer was shot multiple times. Ultimately, Farmer dropped his gun and surrendered. He was arrested on the front lawn of 4431 Alaska Avenue where police officers attended to his gunshot wounds. The Glock, .45 caliber, semi-automatic pistol that Farmer used to shoot at Task Force Officers was seized from the front porch of the vacant resident, along with the high-capacity, 50-round drum magazine. The magazine only contained 27 rounds of live ammunition.

7. Farmer was transported to an area hospital in critical but stable condition. Farmer was conscious at the hospital and voluntarily gave a statement to a detective with the St. Louis Metropolitan Police Department. Farmer admitted to shooting first at the officers and continuing to shoot at officers as he fled and ultimately hid on the porch of a house.

8. Ballistic evidence seized during the investigation of the shooting confirmed that Farmer fired at Task Force Officers on the east side of Virginia, as he fled between buildings on the west side of Virginia (a .40 caliber bullet was found between the buildings and Farmer admitted to clearing a jam in his gun more than once), as he fled up the alley and as he hid on the porch of

a vacant residence on Alaska.

## The Weight of the Evidence

9. Pursuant to Title 18, United States Code, Section 3142(g)(2), the weight of the evidence supports pre-trial detention. Farmer fired shots at eight (8) police officers. Most of the officers were equipped with body worn cameras. The audio and video recordings, along with the ballistic evidence and Farmer's own statement, establish that Farmer fired at officers first and then fled, engaging in a continuing gun battle in a residential neighborhood. Two Task Force Officers suffered injuries as a result of Farmer's conduct. One officer suffered torn ligaments in his ankle which required surgery. Task Force Officer Fields suffered an injury to his eye from flying glass when a bullet struck the windshield of the Ford Explorer which he was occupying while Farmer fired rounds at him and other officers in the Explorer.

## Danger to the Community

10. Pursuant to Title 18, United States Code, Section 3142(g)(4), Defendant should be detained pending trial, due to the danger he poses to any other person or the community. Given the nature and circumstances of the present offenses, no alternative set of restrictions will be sufficient to protect the public.

WHEREFORE, the United States requests this Court to order Defendant detained prior to trial, and further order a detention hearing three (3) days from the date of Defendant's initial appearance.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*s/ Paul J. D'Agrosa*
PAUL J. D'AGROSA, #36966MO
Assistant United States Attorney
Thomas F. Eagleton Courthouse
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102